A. Lincoln Frame *v.* George H. Felix et al., Commissioners of The Water Department of Reading, et al., Appellants.

*Municipal contract—Employment of foreign laborers—Regulation of rate of wages—Act of May* 23, 1889.

A provision in the specifications of a municipal contract for waterworks, requiring the contractor to employ no one not a citizen of the United States, and to pay no man a less sum for his labor than one dollar and a half per day, is inconsistent with the act of May 23, 1889, art. IV, sec. 6, P. L. 283, which requires that such work shall be let to the lowest responsible bidder.

Argued March 7, 1895. Appeal, No. 340, Jan. T., 1895, by defendants, from decree of C. P. Berks Co., Equity Docket, 1894, No. 607, awarding injunction on bill in equity. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity to declare void proceedings in awarding a municipal contract, and for an injunction to restrain the execution of a contract.

The facts appear by the opinion of ENDLICH, J., which was as follows :

FINDINGS OF FACTS.

" 1. The plaintiff, A. Lincoln Frame, is a citizen and taxpayer of the city of Reading, and the owner of real estate in the said city taxable for municipal purposes.

" 2. The city of Reading is a municipal corporation, having accepted and being subject to the provisions of the act of the legislature, entitled ' An act dividing the cities of the state into three classes,' etc., approved May 23, 1874, being a city of the third class, and is also subject to the provisions of the act of the legislature, entitled ' An act to provide for the incorporation and regulation of cities of the third class,' approved May 23, 1889.

" 3. George H. Felix, Matthan Harbster, Frank A. Tyson and Frederick P. Heller, four of the defendants, are commissioners of the water department of the city of Reading, which

department is governed by the provisions of the act March 21, 1865, P. L. 458, and the supplements thereto ; the former providing in sec. 4 that said commissioners shall have power ' to purchase such materials as shall be requisite for keeping said waterworks in good repair, but not for the construction of new works, without the consent and direction of councils ; ' and that ' no new work of construction . . . . shall be undertaken by said commissioners, without the consent of councils being first had and obtained.'

" 4. In pursuance of an ordinance of the councils of the city of Reading, of March 23, 1894, providing as follows :

" Section 1. Be it ordained, etc., that the sum of $35,000 be and the same is hereby appropriated to the department of water for the fiscal year of 1894, to purchase an additional pumping engine for use at Maidencreek pumping station, and to make such alterations to the present pumping station as shall be necessary for the accommodation of said engine. . . .

" Section 2. That the board of water commissioners be and are hereby authorized and directed immediately after the approval of this ordinance, to advertise for proposals for said pumping engine and alterations to building, and award contracts for the same to such party or parties as they may deem proper for the best interests of the city. . . .

" The said commissioners of the water department, having resolved to construct a new inlet at the Maidencreek pumping station of the said city, prepared plans and specifications therefor, and invited proposals for the said work, on the basis of the said plans and specifications ; and that in the said specifications it was stipulated that the person to whom the contract should be awarded should not employ any laborer, artisan or mechanic upon the said work who was not a citizen of the United States ; and that said contractor should not pay less for labor on the said work than $1.50 per day for every person employed.

" 5. A number of proposals were made for the said work upon the basis of the said specifications, and the said commissioners of the water department, on the 18th day of December, A. D. 1894, awarded the contract for the said work to Howard E. Ahrens, one of the defendants, who had made one of the proposals on the basis of the said specifications, and, unless

restrained, will execute an agreement with the said Howard E. Ahrens, for the performance of the said work in accordance with the terms of the said plans and specifications.

" Under these findings of fact and as applicable to them I make the following :

### FINDINGS OF LAW.

" [ (*a*) In the inviting, awarding and conclusion of contracts for new work of construction under authority of the councils of the city of Reading, the board of water commissioners is bound to act in conformity with the provisions of the act of May 23, 1889, art. IV, sec. 6; and the authority given it by the ordinance of March 23, 1894, respecting the construction or alteration at the Maidencreek pumping station must be understood as having been given and as exercisable by said board subject to said provisions.] [4]

" [ (*b*) The fixing by the board of water commissioners, in the specifications for the work to be done at the Maidencreek pumping station, of a minimum price to be paid for labor, and the inviting of proposals and the awarding of the contract upon the basis of such specifications, are a violation of the statutory requirement in the act of May 23, 1889, art. IV, sec. 6, that such work be awarded to the lowest responsible bidder, and therefore void.] [5]

" [ (*c*) The plaintiff, as a citizen, taxpayer and property owner in the city of Reading, has a right to invoke the equity jurisdiction of this court to set aside the action of the board of water commissioners in the premises and to restrain the execution of the proposed agreement between it and the defendant Ahrens in pursuance of said action.] [6]

" (*d*) The plaintiff is entitled to a decree in accordance with the first and second prayers of his bills with costs.

" The reasons which seem to compel the decision I have just indicated are (without regard to the order of the findings) the following :—

" 1. The present bill falls clearly within the category of bills quia timet, 'a well settled branch of equity jurisdiction:' Wheeler v. Philadelphia, 77 Pa. 338, 348 ; Wells v. Bain, 75 Pa. 39 ; Baird v. Rice, 63 Pa. 489 ; Page v. Allen, 58 Pa. 338. Nor can the standing of a citizen and a taxpayer, when money

is to be raised by taxation or expended by the municipal treasury, to proceed in equity to test the validity of the proposed action claimed by him to be illegal, be questioned at this day: Wheeler v. Philadelphia, supra; Sharpless v. Mayor, 21 Pa. 147; Moers v. Reading, 21 Pa. 188; Mott v. R. R. Co., 30 Pa. 9; Page v. Allen, supra; Mazet v. Pittsburg, 137 Pa. 548; the recognized grounds of such standing being special injury to his interests as a taxpayer and want of a common law remedy; see Bispham Eq., sec. 424; 1 Spelling, Extraord. Relief, secs. 614, 717; Mott v. R. R. Co., supra. It is therefore unnecessary for him to show any injury likely to result to him from the alleged illegal action, different in kind from that common to all other citizens and taxpayers and inferable, as a matter of law, from the illegality of the proposed expenditure of the public money. The fact of a threatened injury entitling him to a relief is necessarily involved in the establishment of the illegality of the intended municipal action. Hence I have deemed it needless to make any special finding, as a finding of fact, that the contract here in question, if executed, will do irreparable injury to plaintiff.

"2. It was decided in Reading v. Shepp, 2 Distr. R. 137, upon careful consideration of all the pertinent statutes, that the special act of 1865, creating and governing the water department of the city of Reading, is not repealed by the provisions of the act of 1874, providing a system by which cities of the third class may purchase the franchises, etc., of existing water companies, nor by those of the act of 1889, empowering such cities having become the owners of waterworks, to establish water departments; and that, therefore, the water department of the city of Reading is governed by the act of 1865 and its supplements, and not by the general laws of 1874 and 1889. The question then arises, whether in inviting proposals and awarding contracts, the board is required to conform to the provisions of art. IV, sec. 6, of the last named enactment, which is as follows:

"All work and materials required by the city shall be furnished, and the printing, advertising and all other kinds of work to be done for the city, shall be performed under contract, to be given to the lowest responsible bidder, under such regulations as shall be prescribed by ordinance."

"It was decided in Bork v. Buffalo, 127 N. Y. 64, that a provision in the charter of the city of Buffalo, prohibiting the same from entering into a contract for any work or improvement (exceeding certain prices, and with certain exceptions) 'until the assessment therefor has been confirmed,' did not apply to the board of park commissioners of said city, or to the contracts made by them; but that the provisions mentioned had reference to contracts made by the regular officers of the municipal government, and not those made by a separate department possessing independent corporate powers. It appears from the opinion of Mr. Justice VANN in that case that the park commission was organized by a special statute passed 1869, subsequently to the enactment of the charter of the city, forming no part of it and in no way dependent upon it,—creating an independent department of the city government and clothing it with power to locate parks, lay out approaches thereto, appropriate and condemn lands for these purposes, make rules for the regulation, government and protection of the parks, etc.; all powers, which were to be exercised by the commission independently and without the consent or approval of any other body or officers. In 1885 the provisions of the statute of 1869 were incorporated in a revision of the city charter as one of the titles of the same with the apparent object of having all the laws relating to the city government in its various departments embraced in a single statute for the sake of convenience. The park commissioners were not, however, in terms, made city officers, but were still given 'sole and exclusive power by contract or otherwise to open, grade, construct, repair and maintain the roadways,' etc., without leave or license from the council or other agency of the city. Of the most of improvements determined upon by the commission (not exceeding the limitation of the statute as to amount), it was made the duty of the city council to raise one half by local assessment. The contract in question was executed in form by 'the city of Buffalo by the park commissioners.' Between the relation of the statute creating the Buffalo Park Commission to the charter of the city of Buffalo, and that of the act of 1865 to the previously enacted charter of the city of Reading and the act of 1889, which is its present charter, as well as between the relation of the park commissioners to the city government of

Buffalo and that of the Reading water board to the city government of Reading, there are certain points of resemblance so obvious that they need not be pointed out. But the points of distinction are no less striking though created by special statutes, separate from and forming no part of the charter of the city of Reading, with certain powers and duties defined by the legislature beyond the control of the city councils, and unaffected (as far as its composition, rights, methods and privileges, and the resulting liabilities of property holders are concerned). By subsequent general legislation, the Reading water board is nevertheless not a separate body possessing powers independent of the city councils in the management of the water department or the construction of or contracting for new work within the same. By section 4, act 1865, it is required to perform all such duties relating to the management of the department as the city councils may, consistently with the act, impose upon it; to submit, whenever called upon, estimates of the expense of new works, alterations, etc., contemplated by councils in the waterworks; to carry out, with the aid of the city police, the regulations of councils as to the use of water by the residents of the city; and while permitted to purchase such materials as may be requisite for keeping the works in repair, it is denied the right to do so for the construction of new works without the consent and direction of councils, and forbidden to undertake any such new work except with their consent. Without going any further, therefore, it seems very clear that the water board, existing and acting under the statute of 1865 and its supplements, is nevertheless, at least in all matters in which it is made subject to the direction of councils, but a department of the city government, an established agency of the city for carrying on one branch of the municipal affairs. If it were needful, this conclusion might be fortified by a comparison between the relations of the Reading water board under the statutes here governing, and the relation of the Sewickley water commissioners to that borough under the enactments applicable to it, passed upon in Commissioners v. Sewickley, 159 Pa. 194, where it is said by Mr. Justice GREEN at page 198: 'They are mere officers through whose agency the works were constructed, maintained and operated.' If, however, the Reading water board is not a separate body possessing independent

corporate powers, but a mere department or agency of the city government, in the construction of new waterworks, then it is too plain for argument that the inviting and awarding of a contract for that purpose by the board at the direction of councils is the act of the city through the agency of the board, and so are the execution of the contract and the work of construction. . But the city being required to do all such work by contract to be given to the lowest responsible bidder, it cannot be pretended· that it may evade that requirement by acting indirectly through the agency of the water board. It was held in Re Emigrant Industr. Sav. Bank, 75 N. Y. 388, that the city of New York, being required to do all public work exceeding a certain amount by contract to be awarded to the lowest bidder, could not escape that requirement as to a particular part of such work by delegating the doing of it to the park commissioners in such manner as they might 'deem expedient and for the best interests of the city and property owners.' It follows that when the city councils, by the ordinance of March 23, 1894, authorized the water board to engage in the work of constructing a new inlet at the Maidencreek pumping station, and for that purpose to advertise for proposals and award contracts, it must be conclusively held to have intended a compliance on the part of the water board with act of 1889, art. 4, sec. 6; and what is implied in a law or ordinance is just as much a part of it as what is expressed: United States v. Babbit, 1 Black, 61; Hanchett v. Weber, 17 Ill. App. 114; Slegel v. Lauer, 148 Pa. 236. In a word, in inviting proposals and awarding a contract in this case, the water board was bound by the requirement that municipal work is to be given to and done by the lowest responsible bidder, and to make its specifications accordingly. Has it complied with that requirement? If not, then, as was said by DENIO, J., in Brady v. Mayor, 20 N. Y. 312, a case arising under a similar enactment, it does not require any argument to show that the proceeding was null and void and conferred no rights upon the person to whom the contract was awarded. . . ."

The court granted a preliminary injunction, which it subsequently refused to vacate on hearing and entered the following decree:

" And now, February 4, 1895, this cause came on to be heard at this term and was argued by counsel and thereupon, upon consideration thereof, it is ordered, adjudged and decreed as follows, viz: The inviting of proposals and the awarding of the contract for work by the commissioners of the water department of the city of Reading to Howard E. Ahrens, upon the basis of the specifications as set forth in the plaintiff's bill, are acts unlawful and void and an injunction is awarded and directed to issue perpetually restraining the water department of the said city and the said city itself from executing the said contract with the said Howard E. Ahrens. It is furthermore ordered that the city of Reading pay the costs." [3]

*Errors assigned* were (1) grant of preliminary injunction; (2) refusal to vacate preliminary injunction; (3) decree of the court as above, quoting it; (4–6) findings as above, quoting them.

*William J. Rourke,* city solicitor, for appellants.—The water board was not bound to comply with the act of May 23, 1889. Act of March 21, 1865, P. L. 455–460; Reading v. Shepp, 2 Dist. Rep. 137; Bork v. Buffalo, 127 N. Y. 64; Wheeler v. Phila., 77 Pa. 338; Northern Home for Friendless Children, 2 W. N. C. 349; Wilkes-Barre City Hospital v. Luzerne Co., 84 Pa. 55.

Specifications containing $1.50 as minimum wages were not illegal: Com. v. Mitchell, 82 Pa. 343; Findley v. Pittsburg, 82 Pa. 351 ; Douglass v. Com., 108 Pa. 559.

*Cyrus G. Derr, Stevens & Stevens* with him, for appellee.— The inviting of proposals for municipal work upon the basis of a minimum price to be paid for labor, and upon the basis of the employment only of persons of a certain nationality as workmen, offends against the statutory provision, that contracts for city work shall be awarded to the lowest responsible bidder : Brady v. The Mayor of New York, 20 N. Y. 316 ; Mazet v. Pittsburg, 137 Pa. 561 ; In re Mahan, 20 Hun (N. Y). 301; In re Mauger, 23 Hun (N. Y.) 658.

PER CURIAM, March 18, 1895 :

The important question in this case is raised upon the spec-

ifications forming part of the proposed contract for the new inlet and pumping station about to be built by the water department of the city of Reading. These specifications require the contractor to employ no one not a citizen of the United States and to pay no man a less sum for his labor than one dollar and a half per day. The point made by the plaintiff is that such specifications are not consistent with the provisions of the act of May 23, 1889, art. 4, sec. 6, which require that such work shall be let to the lowest responsible bidder. The learned judge of the court below in his findings of law marked a, b, c and d, has sustained the contention of the plaintiff and fully vindicated his decree. We affirm it for the reasons so clearly stated in these findings. The question discussed in the remainder of the opinion affecting the organization of the water department defendant, is not raised by the assignments of error and we express no opinion upon it.