## Glassman v. Philadelphia

*I. Herbert Rothenberg*, for plaintiff.

*David Berger*, City Solicitor, and *Thomas A. Masterson*, Deputy City Solicitor, for defendant.

LEVINTHAL, J., October 30, 1956.—The basic issues raised by the pleadings in this equity suit are (1) whether or not certain provisions in the contracts between defendant city and plaintiff contractor, requiring the latter to pay his employes no less than the wages prevailing in the community and to provide generally prevailing working conditions, are legally valid, and (2) whether or not the arbitration provisions in the contracts are enforcible.

Plaintiff, Ralph Glassman, individually and trading as Alert Electric Company, is an electrical contractor

doing work for the City of Philadelphia under four contracts entered into between October 6, 1955, and June 27, 1956. Each contract contained what is entitled an "Addendum to Standard Requirements". Sections 1 and 2 read as follows:

"Section 1.  No mechanic or laborer shall be employed to do work under this contract or under any subcontract hereunder, except competent and first class workmen.  No such workmen shall be regarded as competent and first class except those who are duly skilled in their respective fields of labor and who shall be paid not less than the prevailing hourly rate of wages established by the customary and traditional collective bargaining groups for the respective trades or crafts under which such workmen were hired, for such hours of work as they shall work.

"Section 2.  No mechanic or laborer shall be employed to do work under this contract or under any subcontract hereunder, except under general working conditions as will be conducive to efficient and good workmanlike performance.  No general working conditions, including those pertaining to safety, sanitation, health, welfare benefits, pensions, hours of work, overtime and holiday pay, and similar working conditions, shall be regarded as conducive to efficient and good workmanlike performance except those conditions which are at least equivalent to the prevailing conditions for the performance of similar work in the City of Philadelphia."

The addendum also set up an arbitration procedure to mediate and adjudicate any disputes which might arise with reference to whether the contractor was paying such prevailing wages or providing the stipulated working conditions. Sections 3, 4 and 5 provide that where, as in the present instance, the employer is not under contract with a collective bargaining agency, such disputes are to be referred to the Board

of Labor Standards, to be composed of five members appointed by the mayor of Philadelphia, two members "to be chosen from among employers who employ competent and first class mechanics and laborers", two members "to be chosen from among representatives of labor organizations or among other first class mechanics and laborers", and the fifth member to be an official of the city and to serve as the chairman of the board.

It is also expressly provided in section 6 of the addendum that failure by the contractor to pay at least the prevailing wages and to provide generally prevailing working conditions, as defined, should constitute a substantial breach of the contract. The city is explicitly authorized (in paragraph 23 of the contract) to withhold payment to the contractor in the event of such breach.

When the Board of Labor Standards attempted on two occasions to mediate and arbitrate the dispute between the city and plaintiff as to whether the latter was actually paying his workmen prevailing wages, and was providing generally prevailing working conditions, as defined in the addendum, plaintiff refused to recognize the authority of the board, declined to submit his records showing the wages paid by him to his employes and challenged the validity of the addendum in its entirety. The city thereupon withheld all·payments to plaintiff for work performed under his contracts.

On October 9, 1955, plaintiff, individually and as a taxpayer on his own behalf and on behalf of other taxpayers of the City of Philadelphia, filed his complaint in equity, seeking to enjoin the members of the Board of Labor Standards from taking any further action by way of arbitration, and also to enjoin the city and its officials from withholding payments claimed to be due to plaintiff under the contracts. The

complaint is based upon the premise that the addendum is in violation of section 8-200 of the Philadelphia City Charter, requiring the city to let its contracts to the lowest responsible bidder, and that the Board of Labor Standards, as constituted, is prejudiced against him because he is a nonunion employer and, therefore, could not arbitrate the dispute fairly and impartially.

Preliminary objections were filed by defendants on the ground that the complaint fails to state a cause of action upon which equitable relief can be granted to plaintiff for the following reasons, inter alia: (1) Because the addendum, against the enforcement of which plaintiff seeks relief, is legally valid and enforcible; (2) because even if the addendum were invalid, plaintiff is estopped from challenging its validity, and (3) because plaintiff has an adequate remedy at law.

Defendants also filed a petition for a stay of proceedings pending arbitration, together with a counterclaim for specific performance of the arbitration agreement. In the said petition, defendants prayed for an order directing plaintiff to appear before the Board of Labor Standards, to produce his payroll records and to submit to the arbitration proceedings as provided in his contracts.

In contending that the provisions of sections 1 and 2 of the addendum are illegal, plaintiff relies upon the decisions of the Supreme Court of Pennsylvania in Frame v. Felix, 167 Pa. 47 (1895) and Taylor v. Philadelphia, 251 Pa. 458 (1918). The former case held that a city could not require a contractor to employ only United States citizens and to pay a minimum wage of $1.50 a day. The court held such a contract to be inconsistent with a statute requiring municipal work to be let to the lowest responsible bidder. The latter case held that a municipal contract containing a provision that the cutting of stone used by the contractor must be done in Philadelphia, was invalid be-

cause it violated statutory provisions requiring contracts for materials to be let to the lowest responsible bidder.

It is argued by plaintiff that since the Philadelphia City Charter requires the city to let contracts for municipal work to the lowest responsible bidder, it is unlawful to require city contractors to pay their employes minimum wages equivalent to those prevailing in the community. It should be noted that the phrase "lowest responsible bidder" does not mean simply the lowest bidder. " 'Lowest responsible bidder' does not mean that such bidder is merely pecuniarily responsible to carry on the work. The word 'responsible' includes a number of things. It contemplates promptness, faithfulness and the capacity and ability to do the work according to the plans and specifications; men of skill must be employed in and about the work": Wilson v. New Castle City, 301 Pa. 358, 364 (1930).

The city may, of course, make reasonable requirements to assure that the lowest bidder is also responsible. In order to make certain that the contractor will employ competent and first class workmen, the city may require the contractor to pay his employes wages at least equivalent to those prevailing in the community. If workmen are receiving less than such prevailing wage scale, it may be reasonable to infer that they may not be as experienced, as competent and as skilled as those employes who can command the prevailing standard of compensation. The ancient biblical maxim, "The laborer is worthy of his hire", gives expression to a basic fact of contemporary economics.

The argument of plaintiff that the city had "conspired" with labor union representatives to include the provisions of the addendum in all city contracts in order to promote the unionization of all firms entering into contracts with the city, appears to be without

merit. Nowhere in the addendum is there any require-
ment that the contractor must employ union members
only. It is, of course, true that a contract which would
prefer one group of persons over another, such as
union over nonunion labor, would be illegal. See Elliott
v. City of Pittsburgh, 6 Dist. R. 455 (1897). It is,
however, to be noted that the addendum treats all
labor and all contractors on a par, and merely requires
that he who does work for the city shall pay his labor
no less than the wages prevailing in the community.
The mere enforcement of the express provisions of the
addendum cannot have the effect of driving nonunion
contractors out of business or of forcing nonunion
employes to join labor unions.

It is undoubtedly true that one of the motives of the
city in requiring contractors to pay such minimum
wages was to insure that the work would be performed
with reasonable promptness and celerity and would
not be unduly interrupted by strikes and walk-outs in
protest against substandard wages and working con-
ditions. In our opinion, the precautionary provisions
of the addendum are not to be condemned as conspira-
torial and fraudulent, but rather to be commended as
prudent and statesmanlike safeguards in the public
welfare.

Furthermore, in view of the Act of 1937 providing
that minimum wages to be paid by city contractors
may be stipulated in municipal contracts, the afore-
mentioned decisions of Frame v. Felix, supra, and
Taylor v. City, supra, relied upon by plaintiff, are
manifestly obsolete and no longer applicable. That act
reads as follows:

"Minimum wages to be paid by contractor may be
stipulated.

"The specifications upon which contracts are entered
into by any county, city, borough, town, township,
school district or poor district for the construction,

alteration or repairs of any public work or improvement may, at the option of any such political subdivision, contain the minimum wage or wages which may be paid by the contractor or his subcontractors for the work performed by laborers and mechanics employed on such public work or improvement, and such laborers and mechanics shall in such cases be paid not less than such minimum wage or wages": March 16, 1937, P. L. 98, sec. 1, 43 PS §155.

It is clear that the provisions of this act were not superseded by the city charter requirement that all contracts must be let to the lowest responsible bidder. On the contrary, the word "responsible" in the charter incorporates in its meaning the statutory law on the subject which gives the city the right to stipulate the minimum wages which should be paid by the contractor to his employes. The provisions of the Act of 1937 and of the addendum are intended to make it difficult, if not impossible, for a municipal contractor to underbid his competitors by paying his employes less than the standard wage prevailing in the community. The basis for such an enlightened public policy was expounded by Chief Justice Taft as early as 1923, when in the case of Adkins v. Children's Hospital, 261 U. S. 525, at page 563, in speaking of minimum wage laws, he declared:

"Legislatures which adopt a requirement of maximum hours or minimum wages may be presumed to believe that when sweating employers are prevented from paying unduly low wages by positive law they will continue their business, abating that part of their profits, which were wrung from the necessities of their employees, and will concede the better terms required by the law; and that while in individual cases hardship may result, the restriction will enure to the benefit of the general class of employees in whose interest the law is passed and so to that of the community at large."

Even if we were to consider ourselves bound by the decisions in Frame v. Felix, supra, and Taylor v. City, supra, to hold the addendum invalid, it is clear that plaintiff is estopped by his own conduct from challenging its legality. Counsel for plaintiff frankly conceded in the course of his argument that his client had signed the contracts without ever intending to comply with the provisions of the addendum, having been advised that its provisions were illegal and unenforcible. It is obvious that the City of Philadelphia was prejudiced to its detriment by plaintiff's conduct in this regard. If the question of the legality of the addendum had been initially raised, a judicial determination of the issue could have been obtained before the contracts were let. If the addendum were indeed found to be invalid, it would have been eliminated from the contracts. In that event, it is quite likely that other contractors, deterred from bidding by reason of the provisions of the addendum, would have competed for the work and might have underbid plaintiff. It is not only unsportsmanlike, but it may also be, as in this case, inequitable for one to enter into a written contract with the mental reservation that he is free to violate one of its principal provisions. Moreover, it is an elementary rule that one may not retain the benefits of a contract while attacking the legality of one of its important conditions.

It should also be pointed out that, in any event, plaintiff is not entitled to the relief he seeks in equity, since he has an adequate and complete remedy at law. If the city is improperly withholding payments due him under his contracts as he contends, he should seek a money judgment in an action in the law side of the court. A creditor cannot substitute for an action in assumpsit an equity suit for an injunction to restrain his debtor from withholding payment of an alleged debt.

Plaintiff cannot escape the consequences of his questionable conduct by bringing his suit as a taxpayer, as well as in his own right as an aggrieved individual. The complaint cannot be sustained as a taxpayer's suit because its purpose is not to prevent the expenditure of municipal money, but rather to compel its disbursement for the benefit of the contractor: Schlanger v. West Berwick Borough, 261 Pa. 605 (1918), cited with approval in Gericke v. Philadelphia, 353 Pa. 60, at page 63 (1945).

The gratuitous and unsupported allegation by plaintiff that the Board of Labor Standards, as constituted, is prejudiced against him and his contention that, therefore, the board has no jurisdiction to serve as arbitrator and should be restrained by us from so acting, are manifestly untenable.

The contracts between the city and plaintiff expressly provide for arbitration of disputes by the Board of Labor Standards. The Arbitration Act of April 25, 1927, P. L. 381, 5 PS §161, is applicable to these contracts, as expressly provided in section 16 of the act: 5 PS §176. See Philadelphia Housing Authority v. Turner Construction Co., 343 Pa. 512, at page 519 (1942). Section 3 of the Arbitration Act reads as follows:

"The party aggrieved by the alleged failure, neglect, or refusal of another to perform under a written agreement for arbitration, may petition the court of common pleas of the county having jurisdiction for an order to show cause why such arbitration should not proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by law for the service of a summons. The court shall hear and determine the matter upon the petition and an-

swer and depositions, or, after hearing of the parties in open court, as the court may determine; and the court, upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not at issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement": 5 PS §163.

In the case of Nippon Ki-Ito Kaisha, Ltd., v. Ewing-Thomas Corp., 313 Pa. 442 (1934), it was held that if one of the parties to a contract, which provides for the arbitration of disputes arising under it will not voluntarily proceed with the arbitration, he may be compelled to do so in the manner provided for in section 3 of the Arbitration Act of 1927, and that a proceeding to compel arbitration under section 3 is, in legal effect, a bill for specific performance of the arbitration provision of the contract.

An examination of the pleadings reveals that there is no dispute concerning the execution of the arbitration agreement, no dispute as to the fact that the controversy with respect to the payment by the plaintiff of prevailing wages is an issue referable to arbitration under the said agreement, no dispute concerning the city's persistent efforts to have the controversy arbitrated in accordance with the terms of the agreement, and no dispute concerning plaintiff's intransigeant refusal to recognize the board's authority to arbitrate the dispute.

A court of equity will not enjoin an arbitration board, appointed in accordance with the provisions of a written agreement, from hearing, considering and adjudicating a dispute, merely because one party to the controversy suspects that the arbitrators may be prejudiced against him. If the final award of the arbitrators should, in fact, prove to be corrupt and

fraudulent, section 10 of the Act of 1927 provides a full and adequate remedy.

Under the admitted facts in this case, the city is clearly entitled to the relief it seeks in its counterclaim: Pa. R. C. P. 1510 (*a*).

In accordance with the foregoing opinion, the preliminary objections of defendants are sustained and the complaint of plaintiff is hereby dismissed. The prayer of the counterclaim of defendants, seeking an order directing plaintiff specifically to perform the arbitration agreements, is hereby granted.