Opinion by
Montgomery, J.,
This case is before us for the second time.[1] However, our present consideration of it is limited to the question of whether the complaint sufficiently sets forth a cause of action against the City of Philadelphia alone for damages sustained by the plaintiff-appellant, which were occasioned by the stoppage of work being done by plaintiff for the City.
The lower court sustained preliminary objections to the complaint, which were in the nature of a de *120 murrer, and dismissed the bill. This appeal was taken from that action.
This action was commenced in equity for the purpose of enjoining the picketing of the construction site by some of the defendants, and for damages from all of the defendants. At a hearing on a motion for a preliminary injunction, an order was made by Judge Beimel of the court below suspending the picketing. It would now appear that plaintiff has abandoned its claim for damages except against the City, since that is the only one being pressed.
Plaintiff contends that the City is liable to it for expenditures made by it for the employment of a watchman to protect the project during the time the work was stopped because of the picketing. No consequential damages of any kind are claimed. Plaintiff’s theory of its claim as expressed in its brief is that it was the victim of an illegal secondary boycott and that the City was liable “when [it] a City of the First Class violated a condition of cooperation with its general contractor by failing to convene its labor arbitration machinery or take any legal steps to remove that boycott (whether it was organizational or for better working conditions) on the ground the City was ‘helpless’ even though the contract relieved against an act of government and general strikes?”
Plaintiff, a general contractor, engaged only subcontractors who employed union labor. However, there were separate prime contractors for parts of the work. C. Trauss was the prime contractor for the electrical work. Its employes were unorganized. Plaintiff alleges in its complaint that there was no existing labor dispute but that the cause of the work stoppage, claimed by it to have been unlawful, was as follows:
“The defendants (other than the City of Philadelphia and Mr. Eegalbuto), . . . called upon C. Trauss and the City to see that C. Trauss became a union shop, *121 forcing its employees to join a union, or at least pay union rates; or that the City not award contracts to such non-union electrical contractors, but award them only to contractors employing members of Local 98, International Brotherhood Electrical Workers or a union affiliated with the Building and Construction Trades Council of Philadelphia and vicinity.
“Nonacquiescence to these demands by both Trauss and the City has led the defendants, other than the City and Mr. Begalbuto, to picket the premises. . .”
In the light of the allegations of the complaint and the fact that picketing was suspended by order of the lower court, we shall assume for present purposes that the picketing was unlawful. The question, therefore, is whether the City failed in the performance of any duty it owed to plaintiff under those circumstances, to render it liable in damages.
Plaintiff first insists that the City should have made available the procedures of its Board of Labor Standards and compelled the parties involved in the picketing to submit the matter to it. Plaintiff refers to its contract with the City, including an “addendum”, in support of its contention. The “addendum” provides for the employment of competent workmen or contractors at wages not less than prevailing hourly rates established by customary and traditional collective bargaining groups for the respective trades or crafts under working conditions conducive to efficient and good workmanlike performance. Section 3 thereof provides: “When a dispute or controversy arises as to whether the wages which are paid or the working conditions which obtain under this contract or any subcontract hereunder are prevailing wages or working conditions within the meaning of the preceding paragraphs, or when any dispute between Contractor or any Subcontractor hereunder, and the mechanics or laborers of Contractor or such Subcontractor shall *122 threaten or cause a work stoppage of the work to be done under this contract, such dispute shall be referred to the Board of Labor Standards who shall exert its best efforts to have the parties to the dispute reach an agreement. . . .” (Italics supplied) Following an unsuccessful attempt by the Board of Labor Standards to settle such dispute arbitration is provided for.
Since it is alleged by plaintiff that no dispute or controversy between an employer and its employes covered by or under plaintiff’s contract with the City existed, plaintiff cannot rely on the express provisions of its contract to support its contention. However, plaintiff contends further that the City violated an implied duty on its part to cooperate with it in the performance of the contract.
The law is clear that “In the absence of an express provision, the law will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to. carry out the purpose for which the contract was made and to refrain from doing anything that would destroy or injure the other party’s right to receive the fruits of the contract. Accordingly, a promise to do an act necessary to carry out the contract must be implied.” 8 P.L.E., Contracts, §140. However, we cannot agree with the second part of plaintiff’s contention that this imposed on the City the duty to enter into the controversy between the defendant labor organizations and C. Trauss.
From all of the allegations of the complaint, including those hereinbefore set forth, as well as the description of the placards carried by the pickets (also set forth in the complaint), viz.: “The Electrical Work on This Job is Non-Union We Ask The Employees On This Non-Union Work To Join Us For Better Working Conditions Local Union No. 98 I.B.E.W. Affiliated With Building and Construction Trades *123 Council Of Philadelphia & Vicinity A.F.L.-C.I.O.”, or a variance of same as follows, viz.: “The Electrical Work of C. Trauss on This Job is Non-Union,” etc. (same as in other placard), we must reach the same conclusion reached by the lower court that the purpose behind the picketing was to organize the employes of C. Trauss. Adopting this conclusion, it follows that plaintiff is seeking to have the City lend its efforts either to determine a matter that is properly for the Pennsylvania Labor Relations Board or to apply pressure on C. Trauss so that it would coerce its employes into joining the union, which would be an unfair labor practice under section 6 of the Pennsylvania Labor Relations Act, Act of June 1, 1937, P. L. 1168, No. 294, 43 P.S. 211.1 et seq. Anchorage, Inc. v. Waiters & Waitresses Union, 383 Pa. 547, 119 A. 2d 199.
Since the City had a positive duty under the law to let contracts of this nature to the lowest bidder, Taylor v. Philadelphia, 261 Pa. 458, 104 A. 766, and since it would be illegal for it to distinguish between contractors employing union people from those employing people who were not organized, Anthony P. Miller, Inc. v. Wilmington Housing Authority, 165 F. Supp. 275;[2] Glassman v. Philadelphia, 9 Pa. D. & C. 2d 495, we cannot read into the contract the implied provision asserted by plaintiff.
At times in its brief plaintiff intimates that the picketing was due to a wage dispute under the contract between Trauss and the City, although that con *124 tract is not set forth in the complaint. It may, we think, be assumed that it contained the same standard “addendum” which constituted part of plaintiff’s contract. However, we cannot find in plaintiff’s complaint sufficient allegations from which to conclude that its claim is based on the City’s failure to insist upon compliance by Trauss with his contractual obligations or on its failure to enforce that contract, in other words, that the picketing was due to a breach of contract by Trauss. If that is the theory on which plaintiff is basing its claim we must hold that it was insufficiently pleaded. However, we do not decide the validity of such a contention. Our interpretation of the complaint is, as previously stated, that the efforts of the unions were organizational, and the picketing unlawful, which imposes no liability on the City. Such a situation is recognized in West Penn Township School District v. International Brotherhood of Electrical Workers, 396 Pa. 408, 145 A. 2d 258.
The order sustaining the preliminary objections of the City of Philadelphia and dismissing the complaint is affirmed.

 Daniel B. Van Campen Corporation v. Building and Construction Trades Council, 197 Pa. Superior Ct. 379, 179 A. 2d 231.

 This case is similar to our present one. Therein a contractor in an action for breach of contract sought damages for delay by a work stoppage due to a strike on the part of union employes who refused to work with nonunion employes of another contractor. Although the Authority was obligated by the contract to coordinate the work, recovery was denied, since a municipal corporation or an agency of one cannot discriminate in favor of organized labor in awarding contracts.