Points Decided.

(March 3, 1908.)

# FRANK G. GILBERT et al., Appellants, v. CANYON COUNTY et al., Respondents.

## [94 Pac. 1027.]

BOARDS OF COUNTY COMMISSIONERS—SESSIONS OF—REGULAR, AD-JOURNED, SPECIAL—NOTICE OF—BUSINESS TO BE TRANSACTED AT—WHAT MUST BE SPECIFIED.

1. Under secs. 1755, 1756 and 1757, Rev. Stat., regular, adjourned and special meetings of the boards of county commissioners are provided for.

2. The time for holding the regular meetings is fixed by the provisions of sec. 1755, Rev. Stat.

3. Adjourned meetings of the board may be provided for and fixed by the board when in session by an order of the board duly entered on the record, in which must be specified the character of the business to be transacted at such meeting and none other than that specified can be legally transacted.

4. A special meeting of the board may be ordered by a majority of the board. Such order must be entered of record and five days' notice thereof must be given to the member not joining in the order. Such order must specify the business to be transacted at such special meeting, and none other than that specified can be legally transacted.

5. Under the provisions of sec. 1758, the clerk is required to give five days' public notice of all special or adjourned meetings, stating the business to be transacted, by posting three notices in conspicuous places, one of which shall be at the courthouse door.

6. The following order held to be an order for an adjourned meeting, to wit: ''On motion the board adjourned until November 1st, 1906, for the purpose of allowing claims for county courthouse construction, and any other regular business which the board may choose to take up.''

7. *Held,* that five days' public notice of said adjourned meeting was not given, and for that reason no business could legally be transacted thereat by the board.

8. *Held,* that an adjournment of the board at said pretended meeting on the 1st of November, 1906, to the 21st of November, 1906, would not transform or change said pretended adjourned meeting to a regular meeting of the board.

9. *Held,* that the board had no jurisdiction to hold meetings on November 1st and 21st.

(Syllabus by the court.)

APPEAL from the District Court of Seventh Judicial District for Canyon County. Hon. Ed. L. Bryan, Judge.

Action to restrain the board of county commissioners from issuing and selling negotiable bonds for the purpose of building a bridge. Judgment for the respondent. *Reversed.*

W. A. Stone, and John F. McLane, for Appellants.

"A board of commissioners is a tribunal created by statute, with limited jurisdiction and only *quasi*-judicial powers, and cannot proceed except in strict accordance with the mode provided by statute. It has no right or authority to adopt any other mode than that required and provided by statute." (*Dunbar v. Commrs.,* 5 Ida. 407, 49 Pac. 409; *Gorman v. Commrs.,* 1 Ida. 553; 11 Cyc. 398; 7 Am. & Eng. Ency. Law, 2d ed., 983; *Johnson v. Eureka Co.,* 12 Nev. 28.)

County boards can speak only through their records. The validity of their proceedings must appear from their records, and can be shown in no other way. (*Riley v. Pettis Co.,* 96 Mo. 318, 9 S. W. 906; *Phelan v. San Francisco,* 6 Cal. 531; *Conger v. Commrs.,* 5 Ida. 347, 48 Pac. 1064; *Polly v. Hopkins,* 74 Tex. 145, 11 S. W. 1084.)

The action of the board in ordering the issuance and sale of bonds is void because made without proof of jurisdictional facts. (*Johnson v. Eureka Co.,* 12 Nev. 28; *Rhode v. David,* 2 Ind. 53; *State v. Ormsby County Commrs.,* 6 Nev. 95.)

The bond proceedings were all, subsequent to the approval of the petition, taken at adjourned meetings of which no notice was posted as required by law. (Secs. 1755, 1756, 1757, and 1758, Rev. Stat.; 2 Am. & Eng. Ency. Law, 2d ed., 979-981; *People v. Dunn,* 89 Cal. 228, 26 Pac. 761; *Tierney v. Brown,* 67 Miss. 109, 6 South. 737; *El Dorado County v. Reed,* 11 Cal. 130; *Goedgen v. Manitowac Co.,* 10 Fed. Cas. 5501, 2 Biss. 328.)

J. J. Guheen, Atty. Gen., O. M. Van Duyn, Pros. Atty., and Smith & Scatterday, for Respondents.

If it can be gathered from the records, either by express statements therein or by expression of subsequent acts of the commissioners, that they had relied upon and acted upon a matter as having been done, even though the minutes do not show that they had made an express finding of fact that the same had been done, then such is sufficient to show jurisdiction. (*County of Canyon v. Toole,* 8 Ida. 508, 69 Pac. 320; *Humboldt Co. v. Dinsmore,* 75 Cal. 604, 17 Pac. 710; *State v. Crawford County Supervisors,* 39 Wis. 596; *Bank v. Dandridge,* 12 Wheat. (U. S.) 64, 6 L. ed. 552.)

It is the duty of the courts to so construe statutes as to make them effect their evident purpose, and harmonize their various provisions with one another, and when the application of these rules still leaves a question of doubt, the principles of justice and reason must determine the doubt. (*Lamkin v. Sterling,* 1 Ida. 92; *Oregon Street Line Ry. Co. v. Yeates etc.,* 2 Ida. 397, 17 Pac. 457.)

All laws relating to the same subject matter must be construed *in pari materia.* (*Rankin v. Jauman,* 4 Ida. 394, 39 Pac. 1111; *Dunlap v. Pattison,* 4 Ida. 473, 95 Am. St. Rep. 140, 42 Pac. 504.)

A regular meeting of the board may be continued until all the business is disposed of, and until the opening day of the subsequent term. (*State v. Board of Commrs.,* 22 Nev. 15, 34 Pac. 1057.) That the board can adjourn from week to week, or from month to month, is clearly the meaning of our statute. (Sec. 1755, Rev. Stat.; *Ex parte Mirande,* 73 Cal. 365, 14 Pac. 888.)

The records show that the board had been in session from time to time and continuously since the opening day of the October term, 1906. Perhaps the record does not show for what purpose, but it is implied in the order made October 17, 1906.

There are two constructions which can be placed on the language used in the order referred to, but the construction

which will most nearly carry out the intention of the board and the will of the people of the county should be adopted.

SULLIVAN, J.—This action was commenced by the appellant, a citizen and taxpayer of Canyon county, to restrain the defendants, who comprise the board of commissioners of said county, from issuing and selling negotiable coupon bonds of that county for the purpose of raising funds with which to build a bridge across the Boise river at Notus in said county.

The general ground of the complaint is that the commissioners have not followed the provisions of the statute which should govern their actions in such matters, and that, consequently, they are without jurisdiction to issue and sell such bonds. The action was tried on the complaint and answer and judgment was entered in favor of the defendants, denying the relief prayed for. This appeal is from the judgment.

It appears from the record that on July 18, 1906, a petition in proper form was presented to the board praying for the construction of a wagon bridge by the county over Boise river near the town of Notus in said county. The commissioners considered the petition and made the proper order declaring that such bridge was a public necessity and that the cost thereof would be $12,000, and fixed October 11, 1906, as the date of hearing the petition. Proper notice thereof was ordered to be published and was published in the "Caldwell Tribune," a newspaper published in said county, for more than thirty days prior to the date of hearing. However, proof of such publication was not made and filed until April 27, 1907. On October 11, 1906, the board convened in regular session and the matter of said bridge came on for hearing. No objection was made thereto and the board ordered that the prayer of the petition be granted and that proceedings be had for the construction of the bridge as prayed for. The board further found that the cost of said bridge would not exceed $12,000, and accepted plans and specifications for the construction of the same which had

been prepared by the county surveyor. Notice calling for bids for the construction of said bridge was ordered published and was published. Said notice stated that the bids would be opened on November 21, 1906. The board continued in regular session, adjourned from day to day, until October 17th, on which day an order was made and entered that the board adjourn until November 1, 1906. Said order is as follows: ''On motion the board adjourned until November 1st, 1906, for the purpose of allowing claims for courthouse construction and any other regular business which the board may choose to take up.'' On the 1st day of November the board met and the following order was made and entered of record: ''On motion the board adjourned until November 21st, 1906, at 10 o'clock A. M.'' For neither of these two last-mentioned adjournments was any notice posted as required by sec. 1758, Rev. Stat. On November 21st, the board met and opened the bids received for the construction of said bridge pursuant to the notice above referred to. The board proceeded to consider the bids submitted and let the contract for the construction of said bridge for the sum of $17,832, that being the lowest and best bid therefor. Thereupon the board made an order calling for a bond election, submitting the question to the electors whether a bond issue should be made to the amount of $18,000 for the construction of said bridge. No other proceedings relative to this matter were taken by the board until January 3, 1907, but other adjournments were taken by said board between the 21st of November and the 3d day of January, and no business was specified for these adjournments, nor was notice thereof posted as required by sec. 1758, Rev. Stat. for adjourned meetings. The bond election was held on December 29, 1906. On January 3d, 1907, the board met as a board of canvassers, canvassed the votes, and declared the bond issue carried, and adjourned *sine die.* Subsequently, proceedings looking to the sale of the bonds were had, bids were received and a bid was accepted therefor, all of which proceedings are set forth in the record, none of which proceedings are drawn in question except as their validity depends on the proceedings prior to the election.

Upon that state of facts, the court entered judgment in favor of the defendant. Four errors are assigned: 1. That the court erred in rendering judgment for the defendant; 2. The court erred in holding as a matter of law that the board of commissioners in issuing and selling said bonds has acted legally and within its jurisdiction; 3. That the decision is against law; and 4. That the decision is not justified by the evidence.

In our view of this case it is only necessary for us to directly pass upon the second error assigned. That involves the question whether the board acted legally and within its jurisdiction in issuing and selling said bonds. It is contended by counsel for appellant that it did not, for the reason that the action taken by the board on the 1st and 21st of November, 1906, was illegal, as no notice of such meetings was given as required by law. It is contended that said meetings were adjourned meetings as provided by sec. 1756, Rev. Stat., which section is as follows:

"Adjourned meetings may be provided for, fixed and held for the transaction of business by an order duly entered of record, in which must be specified the character of business to be transacted at such meetings, and none other than that specified must be transacted."

The order made on October 17, 1906, fixing the time for an adjourned meeting on November 1, 1906, expressly provides that said adjourned meeting is "for the purpose of allowing claims for courthouse construction and any other regular business which the board may choose to take up." The only specification made in said order is the "allowance of claims for courthouse construction," and the statement in said order, to wit, "any other regular business which the board may choose to take up" is not a sufficient specification under the provisions of sec. 1756, Rev. Stat., and is mere surplusage. It will be observed that no mention is made in said specification of any proceedings to be had in reference to the construction of said bridge or of any election for the purpose of voting bonds or of anything in connection therewith.

Under the provisions of our statute, three kinds of board meetings are provided for. By sec. 1755, Rev. Stat., regular meetings are provided for and are required to be held at the county seat on the second Mondays in January, April, July and October. It is also provided in that section that such other meetings must be held to canvass elections, equalize taxation and other purposes as are prescribed by law or provided by the board. Sec. 1756 provides for adjourned meetings and is above quoted. Sec. 1757 provides for special meetings which may be ordered by the board. Special meetings may be ordered by a majority of the board and the order therefor must be entered of record and five days' notice thereof must be given by the clerk. The order must specify the business to be transacted, and none other than that specified must be transacted at such special meeting. Sec. 1758 is as follows:

"All meetings of the board must be public, and the books, records and accounts must be kept at the office of the clerk, open at all times for public inspection, free of charge. The clerk of the board must give five days' public notice of all special or adjourned meetings, stating the business to be transacted, by posting three notices in conspicuous places, one of which shall be at the courthouse door."

That section provides that the clerk must give five days' notice of all special or adjourned meetings, stating the business to be transacted, by posting three notices in conspicuous places, one of which must be at the courthouse door.

The record clearly shows that the meeting of November 1, 1906, provided for by the order of the board, was an adjourned meeting, as it expressly provides and specifies the character of business to be transacted at that meeting. It provides that the adjourned meeting is for the purpose of allowing claims for courthouse construction and any other regular business which the board may choose to take up, thus limiting and specifying the business to be transacted at that session to considering claims for courthouse construction, as the balance of said order which refers to such regular business as the board may choose to take up is not a sufficient

specification of any business. That being true, and it further appearing that five days' public notice of such adjourned meeting was not given as required by sec. 1758, or at all, the board had no authority to transact any business at said meeting, not even that specified in the order. The statute requires notice of special and adjourned meetings to be given so that the public generally may know when such meetings are to be held and be advised of the business to be transacted at such meetings; therefore no adjourned or special meeting can be legally held until the required statutory notice is given. The meeting of November 1, 1906, was clearly an adjourned meeting within the meaning of our statute, and a simple adjournment of that meeting to November 21, 1906, could not transform an adjourned meeting into a regular session of the board. An adjournment of an illegal meeting cannot make such adjourned meeting legal.

The conclusion we reach is that the board had no jurisdiction to hold the meetings on November 1st and 21st, and all of the business transacted by it at such meetings was without authority of law. Judgment reversed and costs awarded to appellants.

Ailshie, C. J., concurs.

Stewart, J., concurs in the conclusion.

STEWART, J.—I concur with the opinion of Justice Sullivan above, but I do think that the court should have gone further in its opinion and given a fuller consideration of sec. 1756, Rev. Stat. Under this opinion the court has decided that the meeting of the board of commissioners on November 1, 1906, was not a legally adjourned meeting within the meaning of said section. I am of the opinion that inasmuch as this section was before the court for consideration, that the court should have decided whether or not a meeting of the board of county commissioners, at which a specified business is fixed to be transacted, and to which a general adjournment is taken, is a continuation of the regular ses-

sion of said board, or whether it be an adjourned meeting and requires the five days' notice specified in sec. 1758, Rev. Stat.