STATE, Plaintiff, v. RISTY et al, Defendants.

(213 N. W. 952.)

(File No. 6242.    Opinion filed May 9, 1927.)

1. **Drains—Whether Project Be for Enlargement or Repair of Ditch, Proper Petition Must First Be Filed with Board of County Commissioners (Rev. Code 1919, §§ 8458, 8469, 8470, 8476).**

    Whether project be one for enlargement of a ditch, under Rev. Code 1919, § 8476, or for repair thereof, under section 8470, proper petition therefor, under sections 8458, 8469, must be filed with the board of county commissioners, and what board shall do in a given case is controlled thereby.

2. **Drains—Where No Appeal Was Taken from Action of County Commissioners in Establishing Enlarged Drainage Project, Determination of Commissioners Is Final (Rev. Code 1919, §§ 8458, 8476).**

    Since action of the board of commissioners in establishing an enlarged drainage project, under Rev. Code 1919, §§ 8458, 8476, after petition therefor was properly filed, was quasi judicial and appealable, where no appeal was taken therefrom determination of the commissioners is final.

3. **Courts—The Supreme Court May Construe State Statutes, Even Though Its Construction Be at Variance with Construction Thereon by United States Supreme Court.**

    In cases not arising on construction of the federal Constitution or laws, the Supreme Court has jurisdiction and can adopt its own construction of state statutes, even though such constduction be at variance with construction thereon by the Supreme Court of the United States.

4. **Eminent Domain—After Ditch Is Established and Damages Fixed, Board of Commissioners Cannot Construct Drain or Let Contracts Therefor Until Damages Have Been Paid (Rev. Code 1919, §§ 8462-8465, 8467).**

    In view of Rev. Code 1919, §§ 8462-8465, 8467, where drainage ditch has been established, damages fixed, apportionments

made, and equalization had, the board of commissioners must make assessment to pay such damages and cannot construct ditch or let contracts therefor until such damages have been paid.

5. **Drains—Authority Under Statute to Complete Drainage Project Does Not Authorize Assessment to Pay for Maintenance or Repair of Ditch Previously Constructed (Rev. Code 1919, § 8467).**

Authority of the board of county commissioners, under Rev. Code 1919, § 8467, which applies only to raising money for physical construction, after damages are paid, to complete drainage project, does not authorize the board to make assessments for cost of maintenance or repair of drainage ditch previously constructed.

6. **Drains—County Commissioners Were Authorized Under Statute to Make New Topographical Survey, Adopt New Unit, and Include in Assessment District All Properties Benefited (Rev. Code 1919, § 8476).**

Since procedure affecting an enlarged drainage district, including established drainage ditches, was had on notice, under Rev. Code 1919, § 8476, county commissioners were authorized to cause a new topographical survey to be made, to adopt a new unit and make a new apportionment, and could include in assessment district all lands affected and benefited thereby whether they were included in the original assessment areas or not.

7. **Drains—Under Statute, Protest or Objections to Tentative Apportionment of Benefits Must Be Written and Filed with County Commissioners (Rev. Code 1919, § 8458 et seq.).**

In view of Rev. Code 1919, § 8458 et seq., which contemplates trial of issues to be raised by protestants to establishment of drainage project, in order to inform county commissioners as to what issues are to be tried written objections or protest to tentative apportionment of damages must be filed with the commissioners.

8. **Drains—County Commissioners Are Empowered Under Drainage Laws to Proceed Only as Expressly Authorized Thereby or Under Powers Impliedly Granted.**

Drainage procedure is a creature of statute and steps set forth therein must be strictly followed; county commissioners being empowered thereunder to take no steps except such as are expressly authorized by statute or may be reasonably implied from powers granted thereby.

9. **Drains—Plaintiff, Not Having Filed Protest to Assessment of Benefits in Proceeding to Enlarge Established Drainage District, Cannot Complain that Assessment Was Unauthorized (Rev. Code 1919, § 8463).**

Where landowner in enlarged drainage district did not file protest with the board of county commissioners, under Rev. Code 1919, § 8463, to assessment of benefits by the board at the time and place specified in notice therefor, it cannot complain that action of the board was unauthorized.

10. Drain—Unless Protestant Files Written Objection at Time and Place Indicated in Notice, Right Thereto Is Waived (Rev. Code 1919, § 8464).

Since Rev. Code 1919, § 8464, does not authorize county commissioners to extend time within which protest may be filed and issues tendered on tentative apportionment of benefits, made by the commissioners, unless protestant files his written objection at time and place indicated in notice thereof, right thereto is waived.

11. Drains—County Commissioners Have Implied Authority to Continue Hearings Until Final Equalization According to benefits Has Been Accomplished (Rev. Code 1919, §§ 5867, 8463).

Where board of county commissioners has duty, under Rev. Code 1919, § 8463, to make equalization of benefits, it may, in view of its right under section 5867, adjourn from time to time and continue hearings from day to day until final equalization is fixed according to benefits received.

12. Counties—Meeting of County Commissioners Pursuant to Order of Adjournment "Is Continuation of Regular Session"; Board Retaining Jurisdiction of Matters on Hand (Rev. Code 1919, § 5867).

In view of Rev. Code 1919, § 5867, meeting of a duly constituted board of commissioners pursuant to valid order of adjournment is "continuation of regular session," and by such adjournment the board retains jurisdiction of matters on hand.

13. Constitutional Law—Drains—Drainage Law Authorizing Preliminary Determination Whether Drainage Is Necessary and Letting of Contracts for Work Held Not Unconstitutional Violation of Due-process Guaranty (Rev. Code 1919, § 8458 et seq.; Laws 1921, c. 194; Const. art. 6, § 2).

Since proceeding under Drainage Law (Rev. Code 1919, § 8458 et seq., and Laws 1921, c. 194) for establishment of a drainage project is to determine only whether drainage is necessary and permit board of commissioners to establish the drainage and let contracts for work, and does not permit creation of lien against property owner therein, such statutes are not invalid, within Const. art. 6, § 2, as taking of property without due process.

14. Constitutional Law—Notice Under Drainage Law of Hearing on apportionment of Cost Against Property Benefited Held Sufficient Compliance with Requirement of Due Process (Rev.

Code 1919, § 8463, as Amended by Laws 1921, c. 194, § 4; Const. art. 6, § 2).

Notice under Rev. Code 1919, § 8463, as amended by Laws 1921, c. 194, § 4, to interested parties of time and place of hearing on apportionment of cost of drainage against property benefited, is sufficient compliance with Const. art. 6, § 2, prohibiting taking property without due process.

15. **Drains—Complaint Held to Refute Fraud of Petitioners in Petitioning to Enlarge Old Districts so that Additional Property Could Be Assessed Therefor.**

Complaint when taken as a whole, held to refute allegations of fraud therein that landowners in drainage districts fraudulently conspired to procure and present petition to enlarge drainage ditch so that new and additional property could be taken for assessment purposes, so that new property would assist in paying for maintenance and repair of old ditches.

16. **Pleading—Rule that Allegation of Fraud Is Fact Not Disposable Of on Demurrer Is Inapplicable Where Complaint as a Whole Refutes Fraud.**

While, generally, allegation of fraud is an allegation of fact that cannot be disposed of on demurrer, such rule is inapplicable where a complaint, taken as a whole, refutes the allegation of fraud.

Campbell, P. J., dissenting.

---

Note. — See, Headnote **(1)**, American Key-Numbered Digest, Drains, Key-Nos. 50, 52, 19 C. J. Secs. 190 191 (Anno.); **(2)** Drains, Key-No. 50, 19 C. J. Sec. 190; **(3)** Courts, Key-No. 97(6), 15 C. J. Sec. 317; **(4)** Eminent domain, Key-No. 74, 20 C. J. Sec. 269; **(5)** Drains, Key-No. 68, 19 C. J. Sec. 208 (Anno.); **(6)** Drains, Key-No. 70, 19 C. J. Sec. 210; **(7)**, **(9)**, **(10)** and **(11)** Drains, Key-No. 76, 19 C. J. Sec. 249; **(8)** Drains, Key-No. 9, 19 C. J. Secs. 6, 37; **(12)** Counties, Key-No. 52, 15 C. J. Sec. 114; **(13)** Constitutional law, Key-No. 290(1), 12 C. J. Sec. 1063; Drains, Key-No. 2(1), 19 C. J. Sec. 50; **(14)** Constitutional law, Key-No. 290(3), 12 C. J. Sec. 1062; **(15)** Drains, Key-No. 15, 19 C. J. Sec. 26; **(16)** Pleading, Key-No. 216(1), 31 Cyc. 337.

Filing of petition under statutory requirement as jurisdictional prerequisite, see 9 R. C. L. 632; 2 R. C. L. Supp. 846.

As to procedure for establishment of drains and sewers generally, see annotation in 60 L. R. A. 161 et seq.; 9 R. C. L. 637, 638; 2 R. C. L. Supp. 847; 6 R. C. L. Supp. 569.

Original action by the State against A. G. Risty and others, as County Commissioners of Minnehaha County, and others. Judgment for defendants.

*Buell F. Jones,* Attorney General, and *Ray F. Drewry,* Assistant Attorney General, for the State.

*E. O. Jones* and *N. B. Bartlett,* both of Sioux Falls, for Defendants.

POLLEY, J. This is an original action brought by the state for the purpose of enjoining and restraining the defendants from apportioning benefits and levying assessments against the land of plaintiff for the construction of that certain improvement designated as drainage ditch No. 1 and 2 in Minnehaha county. The defendants Risty, Olsen, Even, Alguire, and Stringham are the members of the board of county commissioners of said county. Dale E. Howe is auditor, and McFarland is treasurer of said county.

The improvement involved in this case is the same that was involved in Gilseth v. Risty, 46 S. D. 374, 193 N. W. 132. Also, in Chicago, R. I. & P. Ry. Co. v. Risty (D. C.) 282 F. 364; Id. (C. C. A.) 297 F. 710, and 270 U. S. 378, 46 S. Ct. 236, 70 L. ed. 641.

The complaint purports to set out four separate causes of action. To this complaint defendants interposed a separate demurrer to each cause of action; each demurrer being based on the ground that the complaint does not state facts sufficient to constitute a cause of action.

In its first cause of action set out in the complaint, it is alleged that plaintiff, in its capacity as a sovereign state, is charged with the duty of maintaining a penitentiary for the detention and safekeeping of persons convicted of crime; that such penitentiary is located just north of the city of Sioux Falls; and that in connection with the said penitentiary plaintiff owns a large tract of agricultural land that is used and operated as a means of furnishing labor for the inmates of said penitentiary and for the production of food and supplies for said inmates.

It is further alleged that about the month of July, 1907, a petition was filed with the board of county Commissioners of Minnehaha county praying for the establishment of a drainage ditch, the outlet to which was to be in the Big Sioux river just to the north and east of the said penitentiary buildings, and which ditch was to be extended from said outlet in a northwesterly direction

for a distance of about 1 mile; then approximately due north for a distance of about 2 miles, and had one short lateral. Such proceedings were had by the board that a drainage district; designated as "drainage ditch No. 1," was established. Said ditch had a bottom width of 40 feet and was constructed and completed at a cost of approximately $46,000. Before this ditch was fully completed a second petition was filed, praying for the establishment of a second ditch with its initiatory point in the upper end of ditch No. 1 and to extend north from said point for a distance of about 4 miles. Before action was taken on this petition another petition was filed asking that said ditch be extended north for a distance of about 12 miles. Pursuant to these two petitions, such action was had that a second drainage district, designated as "drainage ditch No. 2," was established. This ditch was constructed. It had a bottom width of 40 feet and cost approximately $81,000.

Drainage ditch No. 1 was paid for by apportioning the benefits and levying assessments against the lands benefited by the construction of such ditch. Drainage district No. 2, when established, included all of drainage district No. 1, and the cost thereof was paid by an apportionment and assessment against all the land in both districts. As a part of the drainage project, a concrete trough or spillway was constructed near the penitentiary to convey the water from the entire drainage system down a drop of something like 100 feet into the Big Sioux river.

In the spring of 1916, an unusual freshet washed out and destroyed the said spillway, and the water commenced to cut away the hill and threatened to injure or destroy the penitentiary buildings, and otherwise damaged the property of the plaintiff. At about the same time the water in the river cut through its banks into the ditch at a point above plaintiff's property. The result of this was to permit the whole river to run through the drainage ditch, over the hill at the penitentiary, and into the river below the city of Sioux Falls. This not only threatened to destroy the penitentiary buildings, but to destroy the water supply of the city and the water power at the falls. The county commissioners immediately placed dams in the ditch and turned the water of the river back into its natural channel through the city.

About this time a petition was filed with the board praying

that drainage ditch No. 1 be permanently closed and that the water be turned into and through 'Covell Lake to the west of the city and from there back into the river. Such proceedings were had pursuant to said petition, that the board, on the 8th day of July, 1916, made an order permanently closing the outlet to drainage ditch No. 1, and establishing the Covell Lake outlet. No proceedings of any kind appear to have been taken pursuant to this order, and on the 3d day of August, 1916, a petition, signed by the city of Sioux Falls, F. L. Blackman, and others, was filed with the board setting forth, among other things:

"That drainage ditches Nos. 1 and 2, and the outlet thereto as constructed, were and are insufficient to accomplish the purpose for which they were constructed, and insufficient to properly drain the agricultural lands within the district or territory supposed to be drained thereby, and insufficient for the drainage of other agricultural lands between the mouth or outlet thereof and the land heretofore included within the assessment districts of said drainage ditches Nos. 1 and 2; that it is necessary for the drainage of argricultural lands within said drainage districts Nos. 1 and 2, and also agricultural lands lying above the mouth of said spillway and between the mouth thereof and the present boundaries of said drainage ditches Nos. 1 and 2, to reconstruct, deepen, widen, and improve said drainage ditches Nos. 1 and 2, and to construct a new outlet or spillway thereto, and that in the reconstruction of the same, it will be necessary that the same be cleaned, deepened, and widened, and that certain levees, dikes, floodgates, and barriers thereto be constructed to such extent as might be necessary to carry off the surplus or flood waters and properly drain and protect the lands within said drainage districts and within the areas hereinbefore described; that to make the foregoing drainage system complete and adequate for the purpose for which it was designed, it will be necessary to straighten, clean out, and deepen the channel of the Big Sioux river at a number of places within the said drainage district; * * * that the lands and territory likely to be affected by the construction of the new spillway and the reconstruction and improvement of said drainage ditches, and which would be drained and benefited and protected thereby, include all the lands lying in the valley of the Big Sioux river and included within the present boundaries of said drainage

districts Nos. 1 and 2, as well as all of the lands in the valley of
the Big Sioux river between the mouth of said spillway and the
city of Dell Rapids, that are subject to overflow and will be sub-
ject to overflow by the waters of said river if the outlet to said
ditches Nos. 1 and 2 be abandoned and said outlet closed, and that
said drainage district should be so extended and enlarged as to
include all lands and property benefited thereby as far down the
valley of the Big Sioux river as the. mouth of said outlet or
spillway."

Such proceedings were had pursuant to the petition that the
board by resolution and order, on the 14th day of August, 1916,
established the exact line and width of said ditch and fixed the
time and place for hearing said petition, and gave notice thereof,
and on October 3, 1916, established said ditch, the center line of
which was the same as the center line of ditches Nos. 1 and 2,
covering the same right of way and territory, and with a bottom
width of approximately 90 feet, and named the same "drainage
ditches Nos. 1 and 2." This ditch, together with dikes and con-
trolling works, was constructed. The river was canalized and
straightened for a distance of about 6 miles, all at a cost of ap-
proximately $255,000.

A new topographical survey of all the territory, including
lands below the original drainage district and above the outlet
thereto, was had, and on the 10th day of June, 1921, the board
adopted a new unit and fixed an apportionment of benefits to all
the aforesaid lands and properties, including the property of the
plaintiff above mentioned, and gave notice as provided by law for
the equalization of the benefits to said lands and properties af-
fected. Before the date set for the said hearing six suits were
started in the federal court to enjoin the board from equalizing
the tentative apportionments already made and from proceeding
to make any apportionment or equalization, and upon which plain-
tiffs in said suits obtained a temporary restraining order. On the
date set for the hearing of said equalization, namely, August 1,
1921, the board met pursuant to said notice, but neither plaintiff
nor any other interested party appeared or filed any protest or
objection to said apportionment. Thereupon the board adopted a
resolution postponing the consideration of the apportionment of
the benefits on drainage ditches Nos. 1 and 2 to August 22, 1921,

at 2 o'clock p. m. of said day, which order and resolution of adjournment was passed from time to time to various dates and is still effective.

The restraining orders in the above-named suits in the federal court were made permanent as to the Great Northern Railway Company, the Northern States Power Company, and the Chicago, Rock Island & Pacific Railway Company, but neither plaintiff in this action nor any other interested party made any remonstrance or filed any objections with the board to the tentative apportionment made by the board, which apportionment to this plaintiff amounted to the total sum of $4,489.

The foregoing facts are common to each of the four causes of action set out in plaintiff's complaint.

Upon the foregoing facts, plaintiff in support of its first cause of action contends that the petition above set out and filed on the 3d day of August, 1916, asking for an enlarged drainage ditch over the line of the two old ditches, was but a pretense; that the board had only authority to repair and maintain drainage ditch No. 1 and drainage ditch No. 2, and was without any right or authority to cause a new topographical survey of all of said territory to be made or to adopt a new unit or to make a new apportionment upon such new topographical survey of all of said territory, and was without right or authority to enlarge said old drainage ditches or to establish an enlarged drainage ditch to include other land and property below the old ditches but not included within the old assessment districts; that the board's only authority was to repair the old ditches and make assessments for the payment of such work, as directed by sections 8470 to 8477, R. C., and that such assessments must thereby be made upon the old apportionment had for the construction of such original ditches; that under the old apportionment the assessment against plaintiff's property would have amounted to only $868.17, while under the pretended new apportionment the assessment will amount to $4,489; and that the board will, unless enjoined by this court, make an assessment upon such new apportionment to plaintiff's damage.

This presents for the consideration of the court the questions, first, whether the board had authority to establish and thereafter construct a new or enlarged drainage ditch over the exact line of .

the two former ditches; second, whether the board, under such conditions, has authority to adopt a new unit and make a new apportionment; and third, whether the board can, under such proceedings, include lands other than those included in the original districts.

Section 8458, R. C., gives the board equal authority to do three things: First, to establish and cause to be constructed any ditch or drain; second, to provide for the straightening or enlargement of water courses or drains previously constructed; and, third, to provide for the maintenance of such water course, ditch, or drain previously constructed.

[1] Section 8476, R. C., gives the board the same power to deepen or widen any drain, or to straighten, clean out, or deepen the channel of streams, and to construct, maintain, remodel, or repair levees, dikes, or barriers for drainage purposes, that are conferred upon it by law to establish and construct drains, but where such deepening, widening, etc., is done, all proceedings must be had upon notice and other procedure prescribed in the Drainage Law for the original construction of drains. This means the procedure prescribed by sections 8454 to and including section 8469, R. C., must be followed.

Repair work only may be done "upon the petition of any person setting forth the necessity thereof, and after due inspection by the board of county commissioners," but without notice or hearing thereon. Section 8470, R. C. Whether the project be one for enlargement or one for repair, the law requires a proper petition to be first filed with the board. What the board shall do in a given case is therefore controlled by the petition presented. In re Sorenson Drainage Ditch, 27 S. D. 342, 131 N. W. 300.

[2] In this case the complaint alleges and the demurrer admits that the old ditches were insufficient to accomplish the purpose for which they were constructed, or to properly drain the agricultural lands within the districts supposed to be drained thereby, and insufficient to drain other agricultural lands south of the old districts and between the southern boundary of the old districts and the mouth or outlet of said ditches; and that it was necessary, in order to drain the above-mentioned lands, to reconstruct, deepen, widen, and enlarge said old ditches. The board was authorized to consider the advisability of granting this peti-

tion, and after hearing and due consideration it granted the prayer of the petition and established the enlarged project. The two old ditches had a bottom width of approximately 40 feet and cost a total of approximately $127,706, while the enlarged project re-sulted in a ditch of about 90-feet bottom width, diked, with con-trolling gates, substantial spillway, and the river canalized, at a cost of approximately $255,000. This is clearly an enlarged ditch, and the procedure therefore is identically the same as though it were an entirely new drainage project. R. C. § 8476. The action of the board in establishing this enlarged project was quasi judi-cial and appealable (In re Sorenson Drainage Ditch, 27 S. D. 342, 131 N. W. 300), but no appeal was ever taken therefrom, and such determination is now final. The board, in establishing such enlarged ditch, was acting under its second power granted in section 8458, R. C.

[3] We are not unmindful of the decision of the Supreme Court of the United States in the case of A. G. Risty et al v. Chi-cago, R. I. & P. Ry. Co., 270 U. S. 378, 46 S. Ct. 236, 70 L. ed. 641, which court had under consideration this same project, and although this court will give to such decision most respectful con-sideration, yet, in cases not arising upon the construction of the federal Constitution or laws of the federal government, this court has full jurisdiction and can adopt its own construction of the state statutes, even though such construction be at variance with the construction placed upon them by the Supreme Court of the United States. City of Sioux Falls v. Walser, 45 S. D. 417, 187 N. W. 821; Rothschild v. Stegar Piano Co., 256 Ill. 196, 99 N. E. 920, 42 L. R. A. (N. S.) 793 at 798, Ann. Cas. 1913E, 276; Bank v. Power Co., 117 Wis., 211, 94 N. W. 74; Wilkins v. Philips, 3 Ohio 49, 17 Am. Dec. 579; Scott v. Austin, 58 Cal. App. 643, 200 P. 251; Ingersoll v. Hahne, 88 N. J. Eq. 222, 101 A. 1030; Soehn-lein v. Soehnlein, 146 Wis. 330, 131 N. W. 739; Wright v. Ex-press Co., 230 Pa. 635, 79 A. 760; Lefebure v. Express Co., 160 Iowa 54, 139 N. W. 1117; Stajcar v. Dickinson, 185 Iowa 49, 169 N. W. 756; Guianios v. Mining Co., 242 Ill. 278, 89 N. E. 1003; Indianapolis v. Navin, 151 Ond. 139, 47 N. E. 525, 51 N. E. 80, 41 L. R. A. 337; Harmon v. Bolley, 187 Ind. 511, 120 N. E. 33, 2 A. L. R. 609; Pickle v. Bank, 88 Tenn. 380, 12 S. W. 919, 7 L. R. A. 93, 17 Am. St. Rep. 900; Towle v. Forney, 14 N. Y. 426.

That court recognized the full meaning of section 8458, R. C., but overlooked the connection between that section and section 8476 and gave improper interpretation to section 8467. This latter section does not apply to assessments for costs of maintenance of an old ditch.

[4] Under our Drainage Law, after a petition is filed accompanied by a bond, inspection had, and a survey, if deemed necessary, is procured, and the surveyor's report filed, the board determines the exact line and width of the ditch, and fixes a time and place for hearing such petition, and gives notice thereof and for the fixing of any damages claimed as compensation for lands to be taken for such drainage; and, upon such hearing being had and the damages fixed or denied, the same is final unless an appeal therefrom shall be taken. Failure to perfect such appeal amounts to a waiver of any such damages or compensation. Section 8462, R. C. The board is not authorized to start work or let contracts until after the damages or compensation has been paid. "After the establishment of the drainage and * * * fixing of the damages, * * * the board * * * shall fix the proportion of benefits of the proposed drainage among the lands affected, and * * * appoint a time and place for equalizing the same." Section 8463, R. C. "After the equalization of the proportion or benefits the board may make an assessment against each tract and property affected, in proportion to the benefits as equalized, for the purpose of paying the damages and the cost of establishment [not construction] thus far incurred or to be incurred." Section 8464, R. C. "Whenever sufficient money shall have been collected the damages occasioned by the construction of such drainage and fixed as herein provided shall be paid, and thereupon the board * * * shall proceed to construct such drainage and shall let contracts for the construction of the same." Section 8465, R. C. Reading the foregoing statutes and interpreting them together, it is apparent that after the ditch is established, damages fixed, apportionments made, equalization had, the board must then make an assessment to pay such damage, and cannot proceed to construct or let contracts for construction until such damages have been paid; for section 8465 says:

"Thereupon the board * * * shall proceed to construct such drainage and * * * let contracts for the construction of the same."

[5]  After the damages have been paid, then further assess-
ment must, of course, be made for the costs of construction.  And
it is provided in section 8467 for such further costs of construc-
tion.   This section clearly applies only to raising money to pay
for the physical construction after damages are paid, and fur-
nishes the board authority to perform the work which completes
the drainage project.   This does not cover, nor does it furnish
authority to the board to make, assessments to pay for cost of
maintenance or repair of a drainage ditch previously constructed.
No time is fixed when this second assessment to pay for the physi-
cal construction of the ditch must be made.   It may be at the time
the contracts are entered in to, or it need not be made until the
drainage project is completed, but when made it is upon the same
apportionment and equalization upon which the assessment was
made to pay damages.   Section 8467 has application only to as-
sessments for the cost of the physical construction of a new drain-
age or its equivalent, and has no reference to maintenance.   For
these reasons, as well as others, the Supreme Court of the United
States was in error as to the proper interpretation of the statutes
under consideration.

[6]  Inasmuch as the procedure affecting this enlarged proj-
ect must be had upon notice and other procedure prescribed for
the construction of drains (section 8476, R. C.), the board had
authority to cause a new topographical survey to be made, a new
unit to be adopted, and a new apportionment made, and can in-
clude in the assessment district all lands or properties affected and
benefited thereby, whether the same were included in the original
assessment areas or not (Gilseth v. Risty, 46 S. D. 374, 193 N.
W. 132.)

For its second cause of action plaintiff realleges all the facts
set out in the first cause of action, including the fixing and giving
of notice of the time and place for the hearing of objections to
the tentative apportionment made by the board on drainage ditches
Nos. 1 and 2, including the adjournment of the board, and claims
that the board will, at its next meeting, unless restrained by this
court, spread the assessment upon said apportionment and will
deny to plaintiff the right then and there to appear and contest
said apportionment made against it and its property, or the
amount of such assessment, or as to whether the lands of plaintiff

are benefited or not, or the amount, if any, of such benefit, and deny to plaintiff the right to contest the validity of said tax or the legality thereof, because the plaintiff and others did not appear and file their written objections at the time and place fixed by said board for filing the same, and that this will compel plaintiff to pay as its share of the cost of the repair of drainage ditch No. 1 and drainage ditch No. 2 the sum of $4,489, while in truth and in fact the plaintiff's just proportion of the cost of such repair and maintenance should be figured on the apportionment originally made upon the old ditch and is in the sum of approximately $868; and that by reason thereof the plaintiff will suffer irreparable damage.

[7]   This presents for the court's consideration three propositions; namely: (1) Should the protest or objections to the tentative apportionment made by the board be written and filed with the board?   (2) Has the board any right or authority to receive protests or objections after the day fixed by the board for the hearing, namely, August 1, 1921?   (3) Does the board retain jurisdiction under the adjournments had to finally fix the apportionment and make the assessment under the notice given, dated June 10, 1921?

The notice dated June 10, 1921, among others things required by statute, provided:

"All such owners and all persons interested are hereby summoned to show cause at the time and place as aforesaid why the apportionment of benefits shall not be fixed as stated and the said determination of said board made final."

[8]   Drainage procedure is a creature of statute, and such steps as the statute sets forth must be strictly followed. On the other hand, the board has no power to go further or take any steps except such as are expressly authorized by statute or may reasonably be implied from the powers granted by statute.   Curtis v. Pound, 32 S. D. 492, 143 N. W. 83.   R. C., section 8463, provides that after the drain is established, the board shall fix the proportion of benefits and "shall appoint a time and place for equalizing the same."   The matters to be considered before the board upon this hearing and by the circuit court upon appeal are one and the same.   In re Drainage Ditch No. 12, 41 S. D. 157, 182 N. W. 770.   R. C., section 8469, specifies what may be the

issues to be determined both upon appeal by the court and by the board upon original hearing; namely: Is a tract taken as a unit benefited at all, and if so, how much? Is the protestant's tract benefited, and if so, is its benefit equal to—or more or less than—the benefit to the unit? Therefore, whether the land and property of plaintiff received any benefits and the extent of the same is clearly one of the issues to be heard and determined by the board. The benefit to the unit, if any, is another issue, and the relative benefit of the protestantant's property to the unit is another issue. Whether the method pursued is wrong, or one by which a wrong result might be reached, is also an issue. Milne v. McKinnon, 32 S. D. 627, 144 N. W. 117. If acts were taken by the board subsequent to the establishment of the ditch by which the assessment would be increased or would result in an unwarranted assessment, this, too, is a proper issue for trial before the board. Curtis v. Pound, 32 S. D. 492, 143 N. W. 778. From the foregoing it is apparent that the statute clearly contemplates the trial of certain issues to be raised by the protestants, and, in order to inform the board as to what these issues are, this can only be accomplished by the filing of a written objection or protest in order that the board may consider such issue. It is not contemplated that the board shall come prepared to meet every conceivable objection in these proceedings, any more than any other proceeding before a judicial tribunal. The statute clearly indicates that a written protest must be filed, because it requires the board to fix a time and place where protestants may "show cause" why the tentative benefits shall not be made final. · In the case of Drainage Ditch No. 12, 44 S. D. 161, 182 N. W. 770, this court passed upon this very issue, and held, in substance, that a property owner desiring to protest or object to the tentative apportionment made must file a written protest setting out any ground or reason why the tentative apportionment should be rejected.

[9] The plaintiff, having neglected to avail itself, at the time and place specified in the notice, of its right to file a protest, cannot now be heard to complain. People v. Chapman, 127 Ill. 387, 19 N. E. 872; People v. Hulin, 237 Ill. 122, 86 N. E. 666; Commissioners v. Smith, 233 Ill. 417, 84 N. E. 376, 16 L. R. A. (N. S.) 292; People v. Le Tempt, 272 Ill. 586, 112 N. E. 335, 9 A. L. R. 835; Railway Co. v. Pierce Co., 51 Wash. 12, 97 P. 1099,

23 L. R. A. (N. S.) 286. See note, Waterbury v. Platt Bros. & Co., 60 L. R. A. 242; Page and Jones on Taxation, §§ 916-918, and cases cited.

[10] The statute nowhere authorizes or permits the board to enlarge or extend the time within which protests may be filed and issues tendered on the tentative apportionment made by the board. It simply authorizes the board to fix a time and place for receiving such protests. As has been said above, the object of requiring these written objections to be filed is to limit the issues to be determined by the board. The statute, as a whole, is very explicit as to when each step in the proceedings must be taken and what must be done. By R. C., section 8464, the board is required to give notice showing the date when the assessment will become delinquent and the date from which interest will begin to run, and from the date of filing a certified copy of the assessment in the treasurer's office the amount of the assessment is due and payable and becomes a lien, and if not paid within 10 days thereafter, a penalty is added. R. C., section 8462, provides that failure to prosecute an appeal or appear and contest an award of damages is to be deemed conclusively a waiver of such damage. The notice given is sufficient to inform each and every person affected of his rights and of the time and place when and where he may file such objections, and there is no implied authority permitting the board to change the place when and where protests may be filed. The whole statute is explicit, and, unless the protestant files his written objection at the time and place indicated in the notice, he has waived such right. Gorman v. Koester, 157 Ind. 205, 60 N. E. 1083; St. Louis v. Lang, 131 Mo. 412, 33 S. W. 54; Hays v. Tippy, 91 Ind. 102.

[11] By section 8463, R. C., it is made the duty of the board to fix the proportion of benefits among the lands and property affected, and its duty to appoint a time and place for equalizing the same, and provides that, upon the hearing of the equalization of the proportion of benefits, the board shall equalize and finally fix the same according to the benefits received. This does not specifically provide that all contests or objections to the tentative apportionment made shall be heard and determind on the day specified and fixed by the board. The time and place specified and fixed by the board is the time and place when and where protest-

ants may file their written objections. Having imposed the duty upon the board to make this equalization, there is an implied authority for the board to continue such hearings from day to day until the mandate of the statute; namely, 'finally equalize and fix the same according to the benefits received," has been accomplished. In addition to this, R. C., section 5867, provides that the board "may adjourn from time to time."

[12] A meeting of a duly constituted board pursuant to a valid order of adjournment is the continuation of the regular session, and by such adjournment the board retains jurisdiction of the matters on hand; namely, to make the proportion of the benefits tentatively fixed the final action of the board, spread the apportionment, and make the assessment. Kraus v. Lehman, 170 Ind. 408, 84 N. E. 769, 15 Ann. Cas. 849; Butterfield v. Treichler, 113 Iowa 328, 85 N. W. 19; Ehinger v. Graham, 190 Mich. 132, 155 N. W. 749; Commonwealth Co. v. Brown, 28 Kan. 83; Gilbert v. Cannon County, 14 Idaho 429, 94 P. 1027-1030. The failure of the plaintiff and others like situated to file its written protest at the time and place appointed; namely, August 1, 1921, constituted a waiver of its right .to object to the tentative apportionments made by the board. The board, however, adjourned its meeting for the purpose of entering its order making such apportionments final, and by such order of adjournment the board has retained jurisdiction to enter such order, and they now have the power and authority to enter such order, and the plaintiff and others who have waived their rights cannot now complain.

[13] In support of its third cause of action plaintiff reiterates all the allegations contained in its first and second causes of action, and in addition thereto alleges that our Drainage Law, being R. C., sections 8458 to 8491, inclusive, is in conflict with section 2 of article 6 of the Constitution of this state, in that said law provides for the establishing of drainage districts without giving notice to or an opportunity to be heard by the property owner as to whether his property shall be included within the confines of such district, or will be benefited by the construction of such drainage and subject to assessment for the payment of the cost thereof; and that for these reasons its property is being taken without due process of law, and that if the board is allowed to proceed with the threatened assessment plaintiff will be compelled

to pay an assessment, amounting to $4,489, to its damage in that amount.

This presents for the consideration of the court two questions: (1) Whether the statute authorizing and directing the board to take the several steps directed by the statute to be taken before the notice of August 1, 1921, are in violation of the above constitutional provision; and (2) whether the notice and hearing to have been held August 1, 1921, were such as satisfied that constitutional provision.

The particular ground upon which the Drainage Law is claimed to be unconstitutional is that the notice required by section 8461, R. C., is not sufficient to notify the property owner that he will be called upon to contribute to the cost of the construction of the drainage ditch, or that his property will be subject to an assessment for that purpose. In other words, that it is not sufficient to constitute "due process."

The first step in the establishing of a drainage project is the petition provided for by section 8459, R. C. This petition must "set forth the necessity for the drainage, a description of the proposed route by its initial and terminal points and its general course, * * * and a general statement of the territory likely to be affected thereby. * * *" It does not seem to be questioned that this petition is sufficient to give the board jurisdiction to proceed with an investigation and cause a survey to be made. After the investigation and the filing of the surveyor's report, the board shall fix a time and place for a hearing on the petition and give notice thereof. "Such notice shall describe the route of the proposed drainage and the tract of country likely to be affected thereby in general terms, the separate tracts of land through which the proposed drainage will pass and give the names of the owners thereof as appears from the records of the office of the register of deeds on the date of the filing of the petition. * * * Such notice shall summon all persons affected by the proposed drainage to appear at such hearing and show cause why the proposed drainage should not be established and constructed, and shall summon all persons deeming themselves damaged by the proposed drainage or claiming compensation for the lands proposed to be taken for the drainage to present their claims therefor at such hearing." Section 8461, R. C. It is not claimed that this notice is not sufficient as to those

through whose land the ditch is to pass or who will be damaged by the construction of said ditch, but that it is not sufficient as to those through whose land the ditch does not pass or who will not be damaged by the construction of the ditch, but whose land will be assessed to pay for the construction of the ditch.

The hearing upon this notice is not for the purpose of determining the particular land that may be benefited by the construction of the ditch, nor the extent to which any tract of land may be benefited, but to determine whether the proposed drainage or any variation shall be "conducive to the public health, convenience, or welfare, or necessity or practical for draining agricultural lands." If the board finds that such drainage will be conducive to the public health, convenience, or welfare, or necessary or practical for draining agricultural lands, the board may establish the drainage accordingly and proceed to let contracts for the work. It then becomes necessary to determine the particular tracts of land that will be benefited by the drainage and the extent to which it will be benfited. Section 8462, R. C., as amended by chapter 194, Laws 1921, § 3. Up to this stage of the proceeding no person has been deprived of his property, nor has any lien been created against his property.

[14] After the drainage has been established and the cost thereof ascertained, it becomes necessary to apportion such cost against the property benefited thereby. Such apportionment is made upon a hearing of the interested parties to be had upon notice of the time and place where such hearing to to be held. "Such notice shall state the description of each tract of land affected by the proposed drainage and the names of the owners thereof * * *, and the proportion of benefits fixed for each tract of property." Section 8463, R. C., as amended by chapter 194, Laws 1921, § 4.

It is contended by defendants that this notice is sufficient to comply with the due-process clause of the state and federal Constitutions. And with this contention we agree. At the hearing held pursuant to this notice, an interested party may appear and show any reason why his property should not be assessed that he could have shown at the hearing for determining whether the drainage should be established. If his property will not be benefited by the establishment of the drainage this may be shown at

either hearing, and if shown at either hearing his property will not be assessed.

This precise question has been the subject of much litigation in other courts, and it seems to be the concensus of opinion that if the property owner is brought in and given an opportunity to be heard at any time before the apportionment finally becomes a lien against his property his constitutional right has not been invaded.

Voigt v. City of Detroit, 184 U. S. 115, 22 S. Ct. 337, 46 L. ed. 459, is a review of a decision of the Supreme Court of Michigan. In that case the appellant contended that:

"No provision is made for a notice to property owners of a time and place of hearing upon either the question of fixing a taxing district or the question of the amount of the award to be spread thereon."

To this the court replied that:

"Such notices were not necessary to vindicate the statute from the charge of being unconstitutional, because 'the statute provides for a hearing in relation to the proportion each piece of property shall bear to the whole cost of the improvement, and the proper notice of this hearing was given.' "

Such holding was upheld by the Supreme Court of the United States, and to the same effect are the following cases: Bemis v. Guirl Drainage Co., 182 Ind. 36, 105 N. E. 496; Erickson et al v. Cass County, 11 N. D. 494, 92 N. W. 841; Johnson v. Lewis, 115 Ind. 490, 18 N. E. 7; Ross v. Board, 128 Iowa 427, 104 N. W. 506, 1 L. R. A. (N. S.) 431; Roberts v. Smith, 115 Mich. 5, 72 N. W. 1901; Viogt v. Detroit, 123 Mich. 547, 82 N. W. 253. In the Risty Cases above referred to Judge Elliott considered this phase of our law and reviewed the cases involving this question in the federal courts and the courts of the other states, and reached the conclusion that our law is constitutional. It is our view that the law is constitutional, and that the notice and hearing set for the 1st day of August, 1921, was a compliance with the requirements of the Constitution.

[15] Plaintiff for its fourth cause of action sets forth the proceedings as in its previous causes of action, and further alleges that, after the order of the commissioners establishing the Covell Lake outlet and cut-off and the resolution of the commissioners

abandoning the outlet to drainage ditches Nos. 1 and 2, certain persons owning lands and property in the two old districts and territory adjacent to the Big Sioux river, and south of the assessment area of said old districts, fraudulently and unlawfully conspired and agreed together, and, pursuant to such conspiracy and in compliance therewith, fraudulently procured and presented a new petition, which was the petition filed August 3, 1916, and above set out, petitioning the board to enlarge the old districts so that new and additional property could be taken into the same for new assessment purposes, in order that such new property might be made to assist in paying for the maintenance and repair of said old ditches, which was all the board could lawfully do, and that this was done with the fraudulent design of procuring the board to establish and construct a pretended enlarged drainage district, with a new topographical survey, a new unit, a new apportionment, and an assessment upon not only the old assessment area, but upon lands not within the old assessment area; and that by reason of such fraud so perpetrated, the plaintiff has been apportioned and will be assessed a greater sum of money and will be compelled to pay a greater percentage of the total costs of the work done than it would if assessed upon the old apportionment already made and which it is claimed by plaintiff should be the basis of the assessment in this case:

This presents for this court's consideration the question whether or not the filing of the petition asking for this enlarged project constituted fraud such as will warrant this court in this action in setting aside the proceedings had under such petition.

[16] It is contended by counsel for plaintiff and by counsel who appear amici curiæ that the allegation of fraud is an allegation of fact that cannot be disposed of on demurrer. As a general rule this may be true, but this rule does not apply where the complaint, taken as a whole, refutes the allegations of fraud. In this case all of the acts and proceedings of the board of county commissioners, and of all others who took any part in the transactions connected with the establishment of the enlarged drainage district and the making of said improvements, the making of the tentative apportionment of benefits, and the assessment based thereon are all set out in detail in this complaint. It appears from the complaint that all these proceedings were carried on in the way pointed

out by statute.  There was no concealment and no misrepresentation.  Nothing to indicate that all persons interested, including the plaintiff and the parties represented by counsel who appear as amici curiæ, were not fully aware at all times of all that was being done.  There is nothing in the complaint to indicate that they did not fully approve of all that was being done.  No appeal was ever taken from any order of the board.  No protest was ever filed, and no objection was ever made until the work had been completed.

Counsel who appear amici curiæ have filed very able, carefully prepared briefs in support of the complaint.  These we have examined as well as to read the cases cited.  Space does not permit a review of these cases, but we find nothing in any of them that we think would warrant us in overruling the demurrer.  As pointed out in the Gilseth Case, there may have been many irregularities in the proceedings of the board and the performance of the work, but plaintiff, having failed to appeal or to have taken other steps to halt the work, should be held to have waived objection and the demurrer should be sustained.

SHERWOOD and BURCH, JJ., concur.

CAMPBELL, P. J., dissents.

GATES, J., not sitting.